UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOCKWOOD BOAT WORKS, INC., | |
| Plaintiff, | Civil Action No. 10-cv-6249 (JAP) |
| v. | **OPINION** |
| MOTOR VESSEL, A "1960" FLYING BRIDGE SPORTFISH, HER ENGINES, TACKLE, APPAREL & HER APPURTENANCES IN REM & SIGMUND BATRUK IN PERSONAM & MOTOR VESSEL, A "1979" LUHRS, HER ENGINES, TACKLE, APPAREL & HER APPURTENANCES IN REM & SIGMUND BATRUK IN PERSONAM, et al., | |
| Defendants. | |

PISANO, District Judge

Presently before the Court is Defendant, Sigmund Batruk's ("Defendant") motion to vacate the default judgment entered against him in favor of Lockwood Boat Works, Inc. ("Plaintiff") [docket #175]. Plaintiff opposes this motion [docket #178] and also moves for Rule 11 sanctions [docket #179]. Defendant opposes Plaintiff's motion for sanctions and also cross-moves for Rule 11 sanctions [docket #186-188]. Plaintiff also opposes Defendant's cross-motion for sanctions [docket #189]. The Court considered the papers filed by the parties and rules on the written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons that follow, this Court DENIES Defendant's motion to vacate default judgment, DENIES Plaintiff's motion for Rule 11 sanctions, and DENIES Defendant's cross-motion for Rule 11 sanctions.

I.   BACKGROUND

On December 3, 2010, Plaintiff filed a Complaint against the instant Defendant *in personam* and against Motor Vessel, a "1960" Flying Bridge Sportfish, her engines, tackle, apparel and her appurtenances *in rem*, and Motor Vessel, a "1979" Luhrs, her engines, tackle, apparel and her appurtenances *in rem* (collectively referred to herein as the "motor vessels") [docket #1].

On December 16, 1997, Defendant signed three written contracts for "winter storage," to cover the period November 1, 1997 through May 1, 1998. Plaintiff alleges that there were subsequent extensions for equivalent services that were made orally. *See Plaintiff's Memorandum of Law in Support of Reply to Sigmund Batruk's Motion to Vacate Judgment*, p. 1. ("Plaintiff's Opposition"). Plaintiff states that Defendant contracted for services totaling $45,321.43 and that Defendant stopped paying for services rendered after September, 2007 which resulted in additional unpaid balances totaling $20,455.68. *Id.* at 2. Thus, Defendant contracted for over 10 years of services incurring total charges of $65,777.11. *Id.*

Moreover, when Defendant began contracting with Plaintiff, he did so initially through his purported corporate entity, Rhone-Antilles Corp., U.S.A. ("Rhone-Antilles"), and then from 2003 onward through his wife, Leigh A. Morse. *Id.* Importantly, however, according to New York Department of State records, Rhone-Antilles dissolved on September 28, 1994.[1] Thus,

---

[1] Defendant argues that the purported corporate entity entering into contracts with Plaintiff was Rhone Antilles Acceptance Corporation and therefore, Plaintiff's arguments with respect to the dissolution of Rhone-Antilles Corp., U.S.A. are without merit. However, the New York Department of State records reveal that there is only one corporate entity with the words "Rhone Antilles" in the title and it is that of Rhone-Antilles Corp., U.S.A. Further,

Defendant was entering into contracts with Plaintiff on behalf of a dissolved entity. Further, Defendant gave Plaintiff his personal address as the corporate address for Rhone-Antilles and paid his bills from a personal bank account with Defendant's wife listed as the sole account owner.

On April 30, 2012, this Court granted Plaintiff's motion for default judgment against Defendant in the amount of $62,312.90, together with attorneys' fees of $3,404.47, totaling, $65,717.37 [docket #171]. Nearly one (1) year later, Defendant moves this Court to vacate its entry of default judgment pursuant to Rule 60(b)(4), and argues that this Court lacked personal jurisdiction over Defendant thereby rendering the entry of default judgment void. Defendant raises no other arguments as to why this Court should vacate default judgment.

Further, both parties seek sanctions pursuant to Federal Rule of Civil Procedure 11. Plaintiff asserts that Defendant's motion to vacate default judgment is frivolous. In turn, Defendant claims that Plaintiff violated Rule 11 by failing to conduct a proper pre-litigation investigation, failing to review Plaintiff's own records, bringing a claim against Defendant where no personal jurisdiction existed, and advancing frivolous arguments in opposition to Defendant's motion to vacate.

## II. DISCUSSION

### a. **Legal Standard – Personal Jurisdiction**

---

Defendant has not provided any evidence which reveals the corporate existence of Rhone Antilles Acceptance Corp. sufficient to rebut Plaintiff's allegations. In fact, the certification of Defendant submitted in support of its motion specifically states that Defendant was the "managing director of Rhone-Antilles Corp., U.S.A." *See Declaration of Sigmund Batruk in Support of Motion to Vacate Default Judgment*, ¶ 3. Accordingly, Defendant's argument regarding Rhone Antilles Acceptance Corp.'s jurisdictional corporate veil is irrelevant, as Defendant may not be shielded by an entity that has never legally existed. Therefore, this Court need not address whether there is jurisdiction over Defendant in his capacity as a corporate agent of Rhone Antilles Acceptance Corp. *See Fashion Brokerage Int'l, LLC v. Jhung Yuro Int'l LLC*, 2011 WL 976478 (D.N.J. Mar. 14, 2011) ("A person is individually liable for contracts he signs under a nonexistent corporate name").

Once personal jurisdiction is challenged the plaintiff has the burden of establishing that the case is properly before the court. *General Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir.2001). In particular, "the plaintiff bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 699 (3d Cir.1990). A plaintiff may satisfy this burden through the use of affidavits or other competent evidence. *Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir.1996).

Generally, a nexus between the defendant, the forum and the litigation is the essential foundation of personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.,* 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The Third Circuit has set forth an analytical framework to determine whether personal jurisdiction over a non-resident defendant is proper. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir.1998). This analysis begins with an examination of Federal Rule of Civil Procedure 4(e). *Id.* A court must then consider whether the defendant's contacts with the forum state are sufficient to support general personal jurisdiction. *Id.* Absent general jurisdiction, a court should determine whether specific personal jurisdiction exists. *Id.*

Federal Rule of Civil Procedure 4(e) allows a court to exercise "personal jurisdiction over non-resident defendants to the fullest extent permissible under the law of the state where the district court sits." *Pennzoil Prods. Co.,* 149 F.3d at 200 (citation omitted). New Jersey's long-arm statute allows the exercise of personal jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Nicholas v. Saul Stone & Co.,* 224 F.3d 179, 184 (3d Cir.2000).

Due Process requires that a defendant have minimum contacts with the forum state and that an exercise of jurisdiction over the defendant comport with "'traditional notions of fair play and substantial justice.'" *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Further, "minimum contacts must have a basis in 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co.,* 480 U.S. at 109 (internal citation omitted). "Essentially, before hearing a case, a court must ask whether 'the quality and nature of the *defendant's* activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state.'" *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984) (modifications and emphasis in original) (quoting *Kulko v.Super. Ct. of Cal.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). Whether sufficient minimum contacts exist to assert personal jurisdiction depends upon "the nature of the interactions and type of jurisdiction asserted." *Telcordia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 177 (3d Cir.2006). Where the cause of action "does not arise out of or relate to the [defendant]'s activities in the forum State," but the defendant has "continuous and systematic" contacts with the forum state sufficient to confer personal jurisdiction, a court is said to exercise general jurisdiction over the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 n. 9 (1984). On the other hand, a court exercises specific jurisdiction when the defendant has limited contacts with the forum state but the suit against him arises out of or relates to those contacts. *Id.* at 414 n. 8.

  b. <u>**Analysis – Personal Jurisdiction**</u>
       i. *Choice of Law*

Here, Defendant contends that, despite Rhone-Antilles' dissolution, Defendant was winding up its corporate affairs and therefore, this Court does not have personal jurisdiction over Defendant personally as he was still acting in his capacity as a corporate agent. In support of the winding up argument, Defendant cites New York law and states that "[b]ecause Rhone-Antilles is a New York corporation, New York law governs issues relating to the internal affairs of the corporation, such as dissolution. *In re McGregor*, 182 B.R. 96, 99 (S.D.N.Y. 1995) (citing *First Nat'l City Bank v. Banco Para el Comercio*, 462 U.S. 611, 621 (1983))" *See Defendant's Reply Brief*, p. 5. Defendant conveniently omits that the Court in *First Nat'l City Bank* continued on to state that "[d]ifferent conflicts principles apply, however, where the rights of third parties *external* to the corporation are at issue." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621, 103 S. Ct. 2591, 2597 (1983) (emphasis in original).

The Restatement (Second) of Conflict of Laws § 301 governs the conflict of law issue here. § 301 states that "[t]he rights and liabilities of a corporation with respect to a third [party] that arise from a corporate act of a sort that can likewise be done by an individual are determined by the same choice-of-law principles as are applicable to non-corporate parties." Comment b. to § 301 further provides that "[a] corporation's rights and duties under a contract are determined by the law selected by application of the rules of §§ 187- 188." Here, the parties did not agree to a choice of law provision and therefore, in determining what law applies to whether Defendant was "winding up" Rhone-Antilles' corporate affairs, this Court will apply the rules set forth in the Restatement (Second) of Conflict of Laws § 188. § 188 provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189- 199 and 203.

Here, the parties entered into the contract in New Jersey. *See Plaintiff's Complaint* ¶ 6. The subject of the contract was for repair services and storage of Defendant's vessels. *Id.* The storage facility is located, and repairs were all performed, in New Jersey. Further, Plaintiff is incorporated in New Jersey and maintains its place of business in New Jersey. The only tie to New York is that Rhone-Antilles is incorporated under the laws of New York and Defendant resides in New York. New York certainly does not have the type of significant relationship to the transaction and the parties as contemplated by the Restatement (Second) of Conflict of Laws §§ 6 and 188. Conversely, all other aspects of this case are directly connected to and/or arose in New Jersey. Pursuant to the standard(s) set forth in the Restatement (Second) of Conflict of Laws § 188, it is clear to the Court that New Jersey law applies to this case.

### ii. "Winding Up"

"The law in New Jersey with regard to the ability of dissolved corporations to be sued is the New Jersey Business Corporation Act, *N.J.S.A.* § 14A:1-1 *et seq.*" *Global Landfill Agreement Grp. v. 280 Dev. Corp.*, 992 F. Supp. 692, 695 (D.N.J. 1998). *N.J.S.A.* § 14A:12-9(1)

provides that "[e]xcept as a court may otherwise direct, a dissolved corporation shall continue its corporate existence but shall carry on no business except for the purpose of winding up its affairs by (a) collecting its assets; (b) conveying for cash or upon deferred payments, with or without security, such of its assets as are not to be distributed in kind to its shareholders; (c) paying, satisfying and discharging its debts and other liabilities; and (d) doing all other acts required to liquidate its business and affairs."

Defendant contends that collecting corporate assets includes the power to "take care of the corporation's property", and that here, Defendant was taking care of Rhone-Antilles' property when he made arrangements with Plaintiff for the vessels' storage. Therefore, Defendant claims, his conduct and contract negotiations with Plaintiff constituted winding up Rhone-Antilles' affairs. This Court disagrees. Winding up means that "the life of the corporation itself is prolonged, being continued as a body corporate 'for the purposes of prosecuting and defending suits of enabling them to settle and close their affairs, of disposing of and conveying their property and of dividing their capital, but not for the purpose of continuing the business for which they were established." *Matawan Bank v. Matawan Tile Co.*, 2 N.J. 116, 126-27, 65 A.2d 729, 734 (1949).

Further, the property of a dissolved corporation becomes a trust fund for the benefit of creditors and stockholders, and to be administered by the directors as statutory trustees. *Id.* ". . . [T]he powers of the trustees in the administration of their trust extend only to winding up the affairs of the corporation and distributing its assets and to such other matters as may be necessarily incidental to the exercise of these functions." *Id.* Importantly, this "does not contemplate the continuation of the business of the defunct corporation." *Id.* Here, Defendant merely alleges that he was "taking care" of Rhone-Antilles' property by making storage

8

arrangements with Plaintiff. Defendant does not provide any evidence that he was "taking care" of these assets in an effort to distribute them and/or benefit Rhone-Antilles' creditors or stockholders, nor does he provide proof that he was acting in a position as a trustee of Rhone-Antilles' property. Rather, it is clear to this Court that Defendant entered into a contract with Plaintiff and continued negotiations with Plaintiff for several years on behalf of a defunct corporation, continued making payments in lieu of such negotiations, and made these payments from a personal account, not as a corporate trustee. Defendant's conduct can hardly be described as winding up the corporate affairs of Rhone-Antilles; therefore, the Court finds that Defendant was not acting as a corporate agent for purposes of personal jurisdiction.

### iii. General Jurisdiction

When a party is subject to the general jurisdiction of a state, that party may be called to answer any claim against it, regardless of whether the subject matter of the cause of action has any connection to the forum. *Pennzoil Prods. Co.,* 149 F.3d at 200. Thus, a plaintiff must demonstrate significantly more than "minimum contacts" to establish general jurisdiction over a defendant. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.,* 819 F.2d 434, 437 (3d Cir.1987). In order to establish general personal jurisdiction, a plaintiff must show that the nonresident defendant's contacts with the state are both "continuous and systematic." *Helicopteros,* 466 U.S. at 414–416 (1984).

Here, Plaintiff fails to allege that Defendant had contacts with the state that were both continuous and systematic. Plaintiff claims generally that Defendant arranged for a decade of services, but concludes this same allegation by stating that "such actions and inactions supplied the minimum contracts [sic] needed to attain *specific*, personal jurisdiction…" *See Plaintiff's*

*Opposition*, at p. 8 (emphasis supplied). Accordingly, Plaintiff has failed to establish that general personal jurisdiction exists over Defendant.

### iv. *Specific Jurisdiction*

"Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir.2007). The analysis with respect to whether specific jurisdiction exists involves a three-part inquiry: First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (citations and internal quotations omitted, alteration in original). The analysis of questions of specific jurisdiction focuses on the relationship between the claims and contacts. *Id.*

Here, the Court finds that Defendant had sufficient minimum contacts with New Jersey. Defendant purposefully traveled to New Jersey and entered into negotiations with Plaintiff to have his vessels stored and repaired in New Jersey. Further, the suit against Defendant arises out of these contacts. Plaintiff's claim(s) stems directly from Defendant's failure to pay for the services which were contracted for in, and to be performed in, New Jersey. Thus, a strong relationship exists between Plaintiff's claims and Defendant's contacts with New Jersey sufficient to establish specific jurisdiction, and the Court finds that allowing Defendant to be sued in New Jersey does not offend traditional notions of fair play and substantial justice. Thus,

because this Court has personal jurisdiction, Defendant's argument that the entry of default judgment is void due to lack of personal jurisdiction is rejected.[2]

Accordingly, Defendant's motion to vacate default judgment is DENIED.

### c. Legal Standard – Rule 11 Sanctions

"The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (internal citation omitted) (citing *Jones v. Pittsburgh National Corp.,* 899 F.2d 1350, 1359 (3d Cir. 1990)). Further, sanctions are appropriate "only in the 'exceptional circumstance' where a claim or motion is patently unmeritous or frivolous." *Id.* (citing *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988)) (citations omitted).

### d. Analysis – Rule 11 Sanctions

Here, Plaintiff moves the Court to enter sanctions against Defendant because Defendant's argument that this Court lacked personal jurisdiction when entering default judgment is frivolous and without merit. While the Court ultimately disagrees with the choice of law and arguments set forth in Defendant's motion to vacate, the Court cannot agree with Plaintiff that these arguments were unreasonable under the circumstances. Defendant provided legal support for the assertions made throughout the motion to vacate and properly set forth the factual history of the dispute. Merely ruling against a party's motion does not obligate the Court to deem it frivolous, and Defendant's motion to vacate does not constitute the type of exceptional circumstance and/or

---

[2] Because this Court finds that it has specific personal jurisdiction, Defendant's alternative argument that there is no personal jurisdiction pursuant to the Supplemental Rules for Admiralty claims, and that under attachment and Supplemental Rule B the judgment should be reduced to $1,000.00, is moot.

patently unmeritous motion that Rule 11 is designed to deter. Accordingly, Plaintiff's motion for Rule 11 sanctions is DENIED.

Similarly, Defendant cross-moves the Court to enter sanctions against Plaintiff because Plaintiff failed to conduct a proper pre-litigation investigation, failed to review Plaintiff's own records, brought a claim against Defendant when no basis for personal jurisdiction existed, and ignored statutory and case law in opposing Defendant's motion to vacate. First, Defendant's contentions that Plaintiff failed to conduct a proper pre-litigation investigation and review Plaintiff's own records are mere conclusions. Defendant sets forth no facts to support these theories and certainly does not bring these claims to the level of an exceptional circumstance warranting sanctions. Second, this Court cannot find that Plaintiff should be sanctioned for bringing a claim against Defendant when no basis for personal jurisdiction existed, as the Court has found that personal jurisdiction over Defendant does exist in this case. Third, and finally, this Court is unaware of how Plaintiff ignored statutory and case law in opposing Defendant's motion to vacate. Rather, Plaintiff cited relevant statutes and case law throughout its opposition. Plaintiff's claims and arguments were reasonable under the circumstances and were meritorious. Accordingly, Defendant's cross-motion for Rule 11 sanctions is DENIED.

## III. CONCLUSION

For the foregoing reasons, this Court DENIES Defendant's motion to vacate default judgment [docket #175], DENIES Plaintiff's motion for Rule 11 sanctions [docket #179], and further DENIES Defendant's cross-motion for Rule 11 sanctions [docket #186]. An appropriate Order accompanies this Opinion.

Date: November 5, 2013                                        /s/ Joel A. Pisano
                                                              JOEL A. PISANO
                                                              United States District Judge